# In the United States Court of Federal Claims

No. 16-152C
(Originally filed: April 22, 2016)
(Re-filed: June 30, 2016)[1]

* * * * * * * * * * * * * * * * * * * *

ULTIMATE CONCRETE, LLC,

      *Plaintiff*,

v.

THE UNITED STATES,

      *Defendant*,

and

FORTIS NETWORKS, INC.,

      *Intervenor*.

Post-Award Bid Protest; Independent Government Estimate; Unbalanced Bid; Responsiveness; Modification of Bid; Anti-Deficiency Act; Advanced Payment

* * * * * * * * * * * * * * * * * * * *

*Bret Steven Wacker*, Detroit, MI, for plaintiff.

*Joshua Ethan Kurland*, United States Department of Justice – Civil Division, Washington, DC, for defendant, with whom was *Charles L. Webster, III*, Assistant District Counsel, Army Corps of Engineers, of counsel.

*David Allen Rose*, Valdosta, GA, for intervenor.

---

[1] This opinion was originally issued under seal to afford the parties an opportunity to propose redactions of protected information. The parties have not proposed any redactions.

_____

OPINION

_____

BRUGGINK, *Judge*

This is a post-award bid protest. Plaintiff, Ultimate Concrete, LLC ("Ultimate") alleges that the decision of the United States Army Corps of Engineers, Fort Worth District ("Agency" or "Corps") to enter into a contract with Fortis Networks, Inc. ("Fortis") was arbitrary and capricious and in violation of procurement law. Before the court are cross motions for judgment on the administrative record. Oral argument was held on April 5, 2016. For the reasons set forth below, and as we announced at the conclusion of argument, the court grants defendant's motion and denies plaintiff's motion.

BACKGROUND

A. Factual History

In August of 2015, the Corps issued a small business solicitation for sealed bids whereby the winning bidder would provide approximately 2.5 miles of fencing, various service roads and culverts, and associated work along the United States-Mexico border near Anapra, New Mexico. Administrative Record ("AR") 105, 276. The bid schedule contained a total of eleven contract line item numbers ("CLINs"). CLIN 0001 was identified as the base item and called for the removal and replacement of approximately 3,850 linear feet of fence and the construction of an associated patrol road, a retaining wall, culverts, and vehicle/drainage gates. AR 219. The time period to complete CLIN 0001 was originally set at 180 calendar days but was amended to extend the performance period to 210 days. AR 712-713. CLIN 0004 was identified as "Option 1 Fence Replacement" and called for the removal and replacement of additional 3,100 linear feet of fence as well as the construction of a patrol road, culverts, and gates. AR 220. Performance time for this option was listed as 120 days. CLIN 0007 was listed as "Option 2 Eastern Access Road" and called for the construction of an access road approximately 890 feet in length. *Id.* Performance time for this option was listed as 45 days. *Id.* The remaining eight CLINs encompassed various minor aspects of the work, including the project staging area and bond premiums. AR 219-21.

Although the Corps intended awarding both option items and noted that option work was ideally to be finished concurrent with completion with the base item, the agency realized that option work may have to commence after work on the base item commenced. AR 220. Accordingly, the agency intended to issue an individual notice to proceed ("NTP") for the base item and each option item. *Id.* Indeed, in response to a query by plaintiff asking for clarification on the performance periods, the Corps noted that the period of performance for each item "will begin when the contractor receives the notice to proceed for that item. They will probably run simultaneously, but could require extension . . . based upon when they are exercised." AR 737.

The solicitation noted that the award would be made to the responsible bidder with the lowest overall price - no factors other than price would be considered in making the award. AR 220. Further, the solicitation stated that the Corps was under no obligation to exercise any of the option items and while the government intended to award all option items, there was no guarantee when they would be awarded, if at all. *Id.*

The Corps ultimately received five sealed bids, including those submitted by plaintiff and intervenor. On September 11, 2015, the Corps held a public bid opening at Fort Worth, Texas. AR 803. Fortis submitted the lowest bid with a price of $10,086,116.00, while Ultimate submitted the second lowest bid at $10,393,119.00. *Id.* Both bids were lower than the independent government estimate ("IGE") of $10,879,721.00. The following chart shows the breakdown of the major CLINs for both Fortis' and Ultimate's bid, along with the IGE:

| Item No. | Fortis Bid | Ultimate Bid | IGE | Balance IGE CLIN as % of total (of IGE) |
|---|---|---|---|---|
| Total Bid | $10,086,116 | $10,393,119 | $10,879,722 | |
| CLIN 0001 | $3,017,500 | $6,991,543 | $6,759,616 | 62% |
| CLIN 0004 | $2,528,000 | $3,029,991 | $3,760,500 | 35% |
| CLIN 0007 | $4,301,682 | $196,485 | $174,143 | 2% |

Plaintiff's Motion for Judgment on the Administrative Record ("PMJAR") at 8. As this chart illustrates, Fortis' bid placed a far greater value in the optional item CLIN 0007. On September 14, 2015, the Corps requested by email that Fortis verify its bid price due to the imbalance in CLIN values. AR 808. The next day, Fortis replied "we have reviewed our submission and are confident we can [per]form for the stated price" and that "[w]e can fully complete all CLINs for our proposed price." AR 821. Fortis noted that the imbalance was due to its calculation method - it had calculated a total price for the project work and placed all road work due to be completed under all CLINs into CLIN 0007. *Id.*

In response to Fortis' verification, the Corps again contacted Fortis to explain that "[a]lthough we plan on awarding CLIN 0007 Option 2 . . . at the time of contract award, notice to proceed (NTP) could be delayed as the Government must go complete condemnation procedures prior to issuing the NTP." AR 819. Accordingly, the Corps cautioned Fortis that if the government was unable to acquire title to the land, there was a chance that CLIN 0007 would have to be terminated for convenience and that in such a situation, Fortis would not be able to bill for the amount it assigned to that item. AR 819-20. The Corps also informed Fortis that "[y]our bid cannot be altered, however you can withdraw your bid. If you do not withdraw your bid and we award the contract to you, you cannot bill for any of CLIN 0007 until after NTP has been issued for that CLIN and a percentage of that work has been completed and agreed upon by the Government as complete." *Id.*

Upon receiving this communication, Fortis conferred with its counsel and replied to the Corps, requesting that it be allowed to amend its bid in order to redistribute the CLIN numbers to be more balanced. AR 815-816. Between September 15 and September 24, 2016, Fortis submitted various materials to the Corps to support its assertion of a mistake-in-bid. FAR § 14.407-3 provides that if a bidder requests permission to correct a mistake, the agency may permit it to do so only if the bidder provides clear and convincing evidence establishing both the existence of the mistake and the bid actually intended. During that time period, the Corp drafted a memo to the Principal Assistant Responsible for Contracting ("PARC") which analyzed both Fortis' original bid and its assertion of a mistake-in-bid. AR 903-905. With regard to the original bid, the Corps concluded that although the bid was mathematically imbalanced when compared to the IGE, it was not materially unbalanced such that it posed an unacceptable risk to the government that it would pay unreasonably high prices for the contract work. *Id.* Thus, the Corps concluded

that rejection of the bid was unwarranted. *Id.* With regard to the mistake-in-bid, the Corps concluded that Fortis had demonstrated by clear and convincing evidence the existence of a mistake in the original bid with respect to cost allocation, and recommended that the PARC approve the request of bid correction. AR 904-905. On September 25, 2015, the PARC confirmed that Fortis should be allowed to correct its original bid. AR 1411-12.

On September 25, 2015, the contracting officer issued a memorandum entitled "Determination of Fair and Reasonable Price." In that memorandum, the contracting officer determined that Fortis was the lowest bidder, that it submitted a request to correct its bid mistake which was approved, and that this did not affect the total cost of the bid. AR 1414-1417. The contracting officer also issued another memorandum, titled "Determination of Responsibility," which concluded that Fortis was a responsible contractor with the ability to obtain adequate financial resources to perform the contract, including average bank deposits in the low 7-figure range and a $5,000,000 line of unutilized credit. AR 1415. Subsequently, on September 25, 2015, the Corps awarded the contract in the amount of $10,023,839.00 to Fortis. The contract included both optional CLINs (0004 and 0007).

B. Procedural History

Ultimate first objected to Fortis' bid by way of a letter to the Corps dated September 15, 2015. Ultimate argued that, should all work on the project commence simultaneously, the contract would "result in an 'overpayment' to Fortis . . . assuming the IGE Estimate reflects the reasonable value of that work." AR 811. Thus, Ultimate argued, the government "would be exposed to significant financial risk for the balance of the work should Fortis fail to complete it." *Id.* Ultimate concluded that the bid was unbalanced and thus unresponsive. *Id.* The Corps responded to this letter on September 28, 2015, noting that while the bid was indeed unbalanced, it was not materially unbalanced and thus it was responsive. Further, the Corps noted that "[t]he base item, which will be awarded, is priced lower than appears correct and an option item, which may or may not be awarded, is priced higher than appears to be correct. Therefore the Contracting Officer has determined that the Fortis bid is not materially unbalanced" and would not pose a risk to the government of overpayment on the contract. AR 1526.

On October 5, 2015, Ultimate filed a protest with Government Accountability Office ("GAO"), asserting substantially the same claims it

raised in its initial letter, and that it raises in the instant case, namely that Fortis' bid was tantamount to an advanced payment, which is prohibited by FAR § 52.214-19(d). AR 1534. Additionally, on October 28, 2015, Ultimate filed a supplemental protest challenging the Corps' decision to permit Fortis to correct its original bid. AR 1845-1924.

On January 13, 2016, GAO denied Ultimate's protest. GAO held that, although the Corp's determination to allow Fortis to correct its bid was improper, Ultimate had failed to establish that the error resulted in competitive prejudice, and that Fortis' bid, while mathematically unbalanced, was not materially unbalanced. AR 2895-2911. Finally, GAO held that the Corps had reasonably determined that Fortis' unbalanced bid did not pose a risk of overpayment to the government. *Id.*

Ultimate filed its complaint here on February 1, 2016. The administrative record was filed on February 12, 2016. Plaintiff filed its motion for judgment on the administrative record on February 29, 2016, and defendant filed its cross-motion for judgment on the administrative record on March 22, 2016. Oral argument was held on April 5, 2016, after which the court granted defendant's motion and denied plaintiff's motion.

## DISCUSSION

The central issue for the court to decide is whether the Corps' decision to accept Fortis' unbalanced bid as responsive was arbitrary and capricious or otherwise in violation of the FAR. Plaintiff argues that the agency failed to "reject the Fortis bid as nonresponsive; analyze the risk imposed by an unbalanced bid; verify the erroneous Fortis bid; require clear and convincing evidence to permit a bid modification; reject the original Fortis bid as so out of line or clearly erroneous that it was not fair to other bidders; and/or consider the original Fortis bid as submitted." PMJAR at 18. Plaintiff also argues that the agency's decision to award the bid was erroneous and lacked a rational basis because "[t]he AR is devoid of any evidence that the Agency analyzed the risks imposed by the original Fortis bid and fails to provide any evidence of a rational basis for the Agency's decision." *Id.*

Before the court can address plaintiff's substantive claims, it first must determine if plaintiff has standing to pursue those claims. A plaintiff bears the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence. *See Brandt v. United States*, 710 F.3d 1369,

1373 (Fed. Cir. 2013). The Tucker Act provides that the Court of Federal Claims:

> shall have jurisdiction to render judgment on any action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award of the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). To establish jurisdiction under this statute, a plaintiff must demonstrate that it is an "interested party." This "imposes more stringent requirements than Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1252, 1359 (Fed. Cir. 2009). Although the term "interested party" is not defined within the statute, courts have construed it to consist of two elements: first, plaintiff must establish that it "is an actual or prospective bidder" and second, that it "possess[es] the requisite direct economic interest." *Id.* (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)). A plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). Although a plaintiff need not show that it was next in line for the award but for the alleged error, demonstrating prejudice requires the plaintiff to show "more than a bare possibility" of receiving the award. *Precision Asset Mgmt. Corp. v. United States*, 125 Fed. Cl. 228, 233 (2016).

In this case, plaintiff satisfies both requirements. Plaintiff is obviously an actual bidder as it submitted a timely bid. Furthermore, plaintiff has shown that there was a substantial chance it would have received the award but for the alleged error. Price was to be the only factor considered in awarding the contract, and, while Fortis was the lowest bidder, Ultimate was the second lowest bidder. Thus, were the court to find that the agency erred in selecting Fortis' bid, Ultimate would be next in line and would receive the award. Accordingly, the court finds that plaintiff has standing to pursue its claims.

The court next turns to plaintiff's substantive argument. Plaintiff advances several arguments which hinge upon one general premise: that Fortis' original bid was materially unbalanced, and that such imbalance leads to numerous material defects. First, it points out that an unbalanced bid could result in an impermissible advanced payment, as contemplated by FAR § 14.201-6(m). PMJAR at 2. Second, it could lead to a situation in which the

agency is at risk for overpayment of goods and services. *Id.* Third, the government could be at risk for non-performance in the event it did not award CLIN 0007 because Fortis might default if forced to abide by its unbalanced bid, which would create greater costs for the government. *Id.* Plaintiff believes that the agency acted arbitrarily and capriciously by failing to take these risks into account.

The court first turns to whether Fortis' original bid was materially unbalanced. FAR § 14.404-2(g) provides that "[a]ny bid *may* be rejected if the prices for any line items or subline items are materially unbalanced." (emphasis added). FAR § 52.214-19(d) further provides:

> The Government may reject a bid as nonresponsive if the prices bid are materially unbalanced between line items or subline items. A bid is materially unbalanced when it is based on prices significantly less than cost for some work and prices which are significantly overstated in relation to cost for other work, and if there is a reasonable doubt that the bid will result in the lowest overall cost to the Government even though it may be the low evaluated bid, or if it is so unbalanced as to be tantamount to allowing an advance payment.

The first thing to note about both of the aforementioned FAR provisions is that they contain permissive language - both sections state that materially unbalanced bids *may* be rejected. This is in contrast to other FAR provisions which contain mandatory language. *E.g.,* FAR § 14.404-2(c) ("Any bid that fails to conform to the delivery schedule or permissible alternates stated in the invitation *shall* be rejected.") (emphasis added). The second important point is that FAR § 52.214-19(d) highlights two factors a bid must meet in order to be materially unbalanced. First, prices must be significantly overstated or understated in relation to other costs; second, there must be a reasonable doubt that the bid will not result in the lowest overall cost to the government or it must appear that the bid is unbalanced to the point of being tantamount to an advance payment.

There can be no doubt that Fortis' original bid is unbalanced. Going by the IGE, the work to be done under CLIN 0007 amounted to approximately 2% of the overall value for the contract. In Fortis' bid, CLIN 0007 accounts for approximately 42.6% of the overall value for the contract. Indeed, the agency noted that Fortis's original bid was "mathematically unbalanced." AR 903-905. Although plaintiff argues that "no further analysis should be necessary"

in order for the bid to be rejected as nonresponsive, PMJAR at 19, the FAR clearly contemplates further analysis. To be materially unbalanced, plaintiff must show that there was a reasonable doubt that the bid would not result in the overall price or that acceptance of the bid would be tantamount to an advance payment.

Plaintiff raises three claims of agency error. Pl's Resp. at 4. The first is that the agency permitted Fortis to modify its original bid. *Id.* The second is the agency's failure to reject Fortis' original bid as nonresponsive. *Id.* The third is that the agency did not (a) reject Fortis' original bid as too far out of line or so clearly erroneous so as to make its acceptance unfair, *or* (b) the agency failed to consider Fortis' original bid as submitted. *Id.* Plaintiff argues that if any of these prejudiced Ultimate, it must prevail.

Both sides agree that it was error for the agency to allow Fortis to modify its bid. Before considering whether that prejudiced plaintiff, the court will first examine whether the agency erred by not finding Fortis' original bid to be nonresponsive. The court's inquiry is whether the agency's action is "arbitrary, capricious, an abuse of discretion, or otherwise contrary to law" or "without observance of standard procedure required by law." 5 U.S.C. § 706(2). The Federal Circuit has described the standard of review as whether the procurement decision "lacked a rational basis" or "involved a violation of regulation or procedure." *Impresa Construzsioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001); *see also Med. Devel. Int'l., Inc. v. United States*, 89 Fed. Cl. 691, 700 (2009). The scope of review is narrow: "[t]he Court will look to see if an agency 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action." *Gulf Grp. Inc. v. United States*, 61 Fed. Cl. 338, 351 (2004) (quoting *Motor Vehicle Mfrs. Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The protestor bears a "heavy burden" of showing that the award had no rational basis and the burden is even higher in a "best value" procurement. *Id.*

The core document illustrating the agency's decision making process is a memorandum sent by the contracting officer to the PARC, dated September 17, 2015, and digitally signed on September 19, 2015. AR. 903-905 It reflects that, prior to awarding the bid to Fortis, the agency considered many of the issues that plaintiff now brings before the court. The memorandum notes that "[r]ejection of the Fortis bid was considered for line items being materially unbalanced in accordance with FAR 14.404-2(g)" but that "the Contracting Officer determined the bid, while unbalanced, is not materially

9

unbalanced" because "since the base item is priced lower than appears to be correct, and an option item, which may not be awarded, is priced high, there is no risk that award of the contract will result in paying unreasonably high prices for contract performance." *Id.* It is clear that the agency flagged the imbalance and considered whether such an imbalance should lead to rejection of the bid. Ultimately, the agency determined that there was no risk of overpayment. If all options on the project were exercised, the government would be getting the lowest price for all the work, and if it ultimately could not award CLIN 0007, the government would stand to benefit from a potential underpayment rather than an overpayment.

With respect to whether or not that created a risk of default, the Corps received a letter from Wells Fargo bank, indicating that Fortis maintained an "average deposits relationship in the low 7-figure range" and also had an active line of credit for $5,000,000, which was currently undrawn. This letter was received before the award of the contract, demonstrating that the Corps did its due diligence in ascertaining Fortis' ability to perform the contract at its original, unbalanced price. It is simply too speculative to conclude that, absent the award of CLIN 0007, Fortis would have been financially unable to complete the project at its quoted price.

Plaintiff also argues that Fortis' original unbalanced bid would be tantamount to allowing it to receive an advanced payment, which it argues is disallowed by both FAR § 52.214-19 and the Anti-Deficiency Act, 31 U.S.C. § 3324. Plaintiff contends that, if all NTPs were issued at the same time and all work was to commence simultaneously, Fortis would receive an advance payment because CLIN 0007 would be completed first and Fortis would be entitled to collect the full value from that CLIN, which would be disproportionate to the work actually completed. Defendant, on the other hand, contends that this argument is flawed because the agency knew that, at the time of award, it was likely that CLIN 0007 would be awarded on a delayed NTP.

The record confirms that the agency considered this advanced payment risk when assessing the viability of Fortis' unbalanced bid. Although throughout the entire process the Corps asserted that it intended on awarding CLIN 0007, it also knew that it might be delayed due to the need to obtain an easement, or that it might not be issued at all. *See* AR 99 (Internal acquisition plan noting that acquiring real estate for the project would be difficult and that the NTP might be delayed). Because the agency knew it was unlikely that performance for CLIN 0007 would commence simultaneously with the other CLINS, it concluded that there was no risk of advance payment because it was

10

extremely unlikely that Fortis would be able to recover $4,301,682 within the first 45 days of performance commencement. This is not, as plaintiff contends, the agency "not disclosing its superior knowledge" to the detriment of plaintiff. PMJAR at 24. Fortis' unbalanced bid certainly did not give it an advantage over any other bidder - if anything, it can be said that the imbalance created greater risk to the contractor. The agency merely took into account the likelihood that CLIN 0007 would be awarded on a delayed NTP (or not at all) and determined there was no risk of advance payment or overpayment by the government if it awarded the contract to Fortis under the unbalanced price schedule.

Accordingly, when considering Fortis' bid, the contracting officer noted that there was no risk to the government because the high priced option item might not ultimately be awarded. AR 903. This was further confirmed by the contracting officer's post-award letter to Ultimate, which responded to concerns of advance payment by noting that "the imbalance presents no risk of allowing an advance payment." AR 1526. The agency was first notified on September 15, 2015, by Ultimate regarding a potential issue with advance payment. It is reasonable to conclude that the contracting officer considered these issues when explaining to the PARC why Fortis' bid, while unbalanced, was not materially unbalanced. We are satisfied that the agency reasonably considered the risk of advance payment to Fortis.

Regarding the error of allowing Fortis to revise its bid, Ultimate cannot show that, in the end, this caused it prejudice. As discussed above, while the agency determined that Fortis should be allowed to modify its bid, it also determined that Fortis' original bid was not materially unbalanced, did not put the government at risk for overpayment, and did not create a situation in which Fortis would reap a windfall from an advanced payment. The evidence strongly suggests that the agency and Fortis were prepared to move forward with the bid as it was originally submitted by Fortis. Thus, even if the PARC had not erred and Fortis was required to perform pursuant to its proposal, there is nothing to suggest that the Corps would have rejected the bid as unresponsive, or that Fortis would have backed out. Plaintiffs argument that but for the agency error, Fortis would have withdrawn is bid is simply too speculative and on its face contrary to the evidence. *See* AR 821 (Fortis confirming it could perform at the stated prices in the face of the agency noting the overall imbalance of the proposal). Accordingly, Ultimate was not prejudiced because, even if the error were eliminated, Fortis would still have received the award.

CONCLUSION

  For the reasons set forth above, the court finds that the government's decision to award the contract to Fortis was not arbitrary or capricious or otherwise in contravention of the law. Accordingly, the court grants defendant's motion for judgment on the administrative record and denies plaintiff's motion for judgment on the administrative record. The clerk shall enter judgment for defendant. No costs.

                s/Eric G. Bruggink
                Eric G. Bruggink
                Senior Judge